UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID NEWMAN,<br><br>　　Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>　　Defendant. | Case No. 3:20-cv-00211<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Eli J. Richardson, District Judge

### REPORT AND RECOMMENDATION

Plaintiff David Newman filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Newman filed a motion for judgment on the administrative record (Doc. No. 19), to which the Commissioner responded in opposition (Doc. No. 20), and Newman filed a reply (Doc. No. 21). Having considered the parties' arguments and the administrative record (Doc. No. 17) as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Newman's motion for judgment on the administrative record.

I.   **Background**

　　A.   **Newman's DIB Application**

Newman applied for DIB on September 1, 2017, alleging that he has been disabled and unable to work since July 17, 2017, as a result of diabetes mellitus, back problems treated by

surgery, a heart condition for which he had quintuple bypass surgery, post-traumatic stress disorder (PTSD), manic depression, and bipolar disorder with psychotic episodes. (AR 59–60.[1]) The Commissioner denied Newman's application initially and on reconsideration. (AR 58, 75.) At Newman's request, an administrative law judge (ALJ) held a hearing regarding his application on June 12, 2019. (AR 35–57, 102–03.) Newman appeared with a non-attorney representative and testified.[2] (AR 37, 39–51.) The ALJ also heard testimony from a vocational expert. (AR 51–56.)

### B. The ALJ's Findings

On July 3, 2019, the ALJ issued a written decision finding that Newman was not disabled within the meaning of the Social Security Act and applicable regulations and denying his claim for DIB. (AR 15–30.) The ALJ made the following enumerated findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since July 7, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> \* \* \*
>
> 3. The claimant has the following severe impairments: ischemic heart disease, chronic obstructive pulmonary disease (COPD), obesity, hypertension, degenerative disc disease and depressive bipolar related disorder. (20 CFR 404.1520(c)).
>
> \* \* \*
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[1] The transcript of the administrative record (Doc. No. 17) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

[2] The hearing transcript mistakenly identifies Newman's representative as an attorney. (AR 35.) However, other documents in the administrative record confirm that he was a non-attorney representative. (AR 93, 94.)

2

Case 3:20-cv-00211    Document 25    Filed 03/07/23    Page 2 of 14 PageID #: 743

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can engage in occasional postural activities but can never climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to extreme heat and cold, humidity, dust, odors, fumes, pulmonary irritants and areas of poor ventilation. He should also avoid concentrated exposure to work around hazardous machinery, moving parts and work at unprotected heights. He can understand and perform simple, detailed and multistep tasks, but not complex tasks and interact occasionally with supervisors and coworkers but should have no interaction with the general public. The claimant can adapt to occasional changes in the work place and can maintain concentration, persistence and pace for such tasks with normal breaks spread throughout the day.

* * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

* * *

7.  The claimant was born on August 9, 1970 and was 46 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR 17–29.) The Social Security Appeals Counsel denied Newman's request for review on September 19, 2019, making the ALJ's decision the final decision of the Commissioner. (AR 4–9.) At Newman's request, the Social Security Appeals Counsel extended the time for Newman to file a civil action challenging the Commissioner's final decision. (AR 1–3.)

### C. Appeal Under 42 U.S.C. § 405(g)

Newman filed this action for review of the ALJ's decision on March 10, 2020 (Doc. No. 1), and the Court has jurisdiction under 42 U.S.C. § 405(g). Newman argues that the ALJ improperly evaluated Newman's testimony about his disabling symptoms, erred in constructing Newman's residual functional capacity, and improperly relied on vocational expert testimony that did not reflect all of Newman's impairments and limitations. (Doc. No. 19-1.) The Commissioner responds that the ALJ complied with SSA regulations and that his determinations are supported by substantial record evidence. (Doc. No. 20.) Newman's reply reiterates his arguments regarding the ALJ's evaluation of his symptoms and construction of his RFC. (Doc. No. 21.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

      **B.**     **Determining Disability at the Administrative Level**

Newman applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Newman must establish that he had a disability on or before the last date he was eligible for insurance under Title II, which is determined based on his earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.*

5

Case 3:20-cv-00211   Document 25   Filed 03/07/23   Page 5 of 14 PageID #: 746

§ 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*,

6

459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

### III. Analysis

#### A. The ALJ's Analysis of Newman's Disabling Symptoms

Newman argues that the ALJ erred in evaluating his testimony about his disabling symptoms. (Doc. Nos. 19-1, 21.)

The ALJ analyzed Newman's alleged symptoms as follows:

> The claimant alleges his impairments cause limitations in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, understand, complete tasks, and get along with others. (Hearing testimony; 7E/6). The claimant further stated that he could lift up to five to ten pounds, and walk for 50 feet before needing a five-minute rest. (Hearing testimony; 7E/6). The claimant cannot stand for more than 15 minutes without pain in his legs and back, and he needs to rest for 30 minutes before he can get back up. (Hearing testimony). He can sit for 30 minutes before needing to get up and stretch or change position due to back pain and difficulty breathing. (Hearing testimony). The claimant is easily fatigued, getting out of breath tying his shoes, and this causes him to shake. (Hearing testimony). He spends about 12 hours per day in bed, getting up to make coffee, and moving from spot to spot because he cannot stand or sit for every long. (Hearing testimony). The claimant takes several naps on a daily basis. (Hearing testimony). The claimant testified that he lost his last job because he was taking too many breaks after his heart surgery due to fatigue, lightheadedness and nausea and those symptoms continue to the current time. (Hearing testimony). Even sitting on the couch makes him fatigued. (Hearing testimony). The claimant lives with his wife and extended family. (Hearing testimony). The claimant tries to help around the house, but a chore such as sweeping his living room takes him 15 minutes and then he has to go rest because of fatigue. (Hearing testimony). The claimant cannot

squat or bend over without getting a head rush and nearly fainting, and has fallen after bending over previously. (Hearing testimony).

Because he no longer has insurance, he is not taking medication for his mental impairments. (Hearing testimony). His mental impairments cause him to get aggressive with authority figures, and during the hearing, he asked to take a break because he was getting irritated and felt badgered by the judge's questions. (Hearing testimony). The claimant cannot concentrate for more than 5 minutes and cannot finish a TV program. (Hearing testimony; 5E/6). He has difficulty being around other people, and stays in his room and does not engage in any social activities. (Hearing testimony; 7E/5). He has problems with his memory to the extent that he gets up to do something and forgets what he's gotten up to do, which is exacerbated by intrusive thoughts and visual hallucinations of shadows and streaks. (Hearing testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported, for the reasons explained in this decision. Overall, the record shows a significant history of psychiatric symptoms, back pain, breathing impairments and cardiac dysfunction; however, the claimant's allegations are not fully supported by the objective medical evidence or the longitudinal treatment history, which generally shows routine and conservative treatment with few significant objective abnormalities. Additionally, the claimant reported activities that are not curtailed to the extent that would be expected given her complaints of disabling symptoms and limitations. Specifically, the claimant testified that he was able to walk for 20 minutes stopping briefly to catch his breath every 50 to 100 yards. (Hearing testimony). He is able to prepare dinner or breakfast once or twice a week, and he cares for pets by giving them food and water. (7E/2, 3). Although the claimant reported constant shortness of breath on minimal exertion, at the medical consultative examination in January 2018, the medical consultative examiner did not note shortness of breath or dyspnea during the examinations. (8F). The claimant reported in June 2018 that he was able to lift up to 20 pounds. (7E/6). In November 2018, the claimant was noted to be able to independently complete his activities of daily living. (10F/8). By his own report, the claimant is able to follow instructions satisfactorily. (5E/6).

(AR 22–23.)

Newman argues that the ALJ's determination that "the objective medical evidence" and Newman's "longitudinal treatment history . . . generally show[ed] routine and conservative treatment" of Newman's medically determinable impairments, including his "psychiatric symptoms . . . and cardiac dysfunction[,]" (AR 23) lacks the support of substantial record

evidence. Newman points to his quintuple bypass surgery and repeated psychiatric hospitalizations, among other record evidence of significant treatment, to support this argument. (Doc. No. 19-1.) The Commissioner has not directly responded to Newman's arguments regarding the ALJ's finding that Newman received only "routine and conservative treatment."

SSA regulations require an ALJ determining disability to "consider all [of the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Section 404.1529(c)(3) allows an ALJ to consider a DIB claimant's record of current and past medical treatment in evaluating the claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3)(v). The SSA has explained that, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," then the SSA "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016).

However, the SSA "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Examples of reasons why a complaint may not seek treatment or follow a doctor's instructions include the fact that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services[,]" that "mental limitations" may prevent an individual from "understand[ing] the appropriate treatment for or the need for consistent treatment of his or her impairment[,]" and that an individual with "a mental impairment . . . may not be aware that he or

9

she has a disorder that requires treatment." *Id.* at *9. These examples are illustrative, not exhaustive, and the SSA "will consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [it] considered the individual's reasons in [its] evaluation of the individual's symptoms." *Id.*

It is undisputed that Newman suffers from severe ischemic heart disease for which he underwent quintuple coronary artery bypass surgery in February 2017, among other medical interventions. (AR 17, 23, 24, 26, 27, 248–51.) It is further undisputed that Newman suffers from severe bipolar disorder and that his treatment for bipolar disorder includes medication and at least three inpatient psychiatric hospitalizations triggered by suicidal ideation. (AR 17, 20, 21, 25, 26, 28, 221.) The ALJ discussed Newman's quintuple bypass surgery and Newman's most recent psychiatric hospitalization (AR 20, 21, 23–28) but still concluded that "the objective medical evidence [and] the longitudinal treatment history[ ] . . . generally show[ed] routine and conservative treatment" of Newman's "medically determinable impairments[,]" including his "psychiatric symptoms . . . and cardiac dysfunction" (AR 23).

The ALJ's characterization of Newman's quintuple bypass surgery and repeated psychiatric hospitalizations with suicidal ideation—in concert with other medical interventions—as "routine and conservative treatment" (AR 23) of heart disease and bipolar disorder lacks the support of substantial record evidence. *See Biestek*, 139 S. Ct. at 1154; *Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp. 2d 787, 797 (S.D. Ohio 2013) (finding ALJ's determination "that Plaintiff ha[d] received only conservative treatment" was "not accurate" where plaintiff underwent shoulder surgery among other treatments); *cf. Jeffrey Scott H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00014, 2022 WL 4002318, at *14 (W.D. Ky. Sept. 1, 2022) (finding "the absence of [psychiatric

hospitalization] is illustrative of a history limited to conservative mental health treatment"). Both courses of treatment represent significant interventions to address life-threatening disorders.

Further, the ALJ acknowledged that Newman lost his health insurance in August 2017, after being fired from his last job (AR 17, 25) and that, without insurance, Newman could no longer afford regular medical care or the medications he had been prescribed for his diabetes and mental health impairments (AR 18, 22). Nevertheless, the ALJ repeatedly referenced Newman's failure to seek medical care as a reason for discounting Newman's testimony about the severity of his disabling symptoms. For example, the ALJ found that, "[r]egarding treatment of [Newman's] cardiopulmonary impairments, he generally pursued conservative treatment such as post-surgical rehabilitation, although he discontinued attending rehabilitations classes in May 2017 after 8 sessions and did not return calls from the provider. (4F/7)." (AR 23.) The ALJ also found that "[t]he record does not document any specialized treatment for the claimant's back pain such as physical therapy, epidural injections or a TENS machine. Likewise, the record does not document that the claimant sought emergency treatment for back related pain." (AR 24.) And the ALJ found that "the record does not document mental health treatment after December 2018. (AR 25.)

While the ALJ acknowledged the fact that Newman lost his health insurance, SSA regulations require ALJs to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and promise that ALJs "will explain how [they] considered the individual's reasons in [their] evaluation of the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9. The record contains evidence that Newman lost his job and health insurance in 2017 (AR 39–40); that his wife was his only source of income thereafter (AR 586); and that Newman could no longer afford prescription medications for his diabetes and mental health impairments (AR 65, 84, 451, 493), mental health therapy (AR 225, 231), or appointments with a

heart specialist (AR 40) or his primary care provider (AR 586–87) after he lost his income and insurance.[3] On this record, the Court cannot find that the ALJ followed SSA rules and regulations requiring him to consider and address Newman's reasons for not pursuing treatment and to explain that consideration in his decision. *See* SSR 16-3p, 2016 WL 1119029, at *9. The ALJ's finding that, "[d]espite not having medication or mental health treatment for over a year, [Newman] was generally stable" lacks the support of substantial record evidence because, as the ALJ further found, after a year without mental health treatment Newman "was admitted to inpatient psychiatric treatment for suicidal ideation with multiple plans, after he reported being suicidal . . . when he sought emergency treatment for chest pain." (AR 25.)

Where, as here, "an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

Remand is therefore warranted for reconsideration of Newman's disabling symptoms.

### B. Newman's Remaining Arguments

Newman further argues that the ALJ (1) failed to build a logical bridge between the record evidence of Newman's impairments and the limitations included in the RFC and (2) improperly relied on vocational expert testimony that did not consider all of Newman's mental and physical impairments. (Doc. Nos. 19-1, 21.)

Because remand is warranted to reconsider Newman's disabling symptoms, and because that reconsideration may require reformulation of Newman's RFC and additional testimony from a vocational expert, the Court need not address Newman's remaining arguments at this time. *See*

---

[3] The effects of Newman's bipolar disorder provide an independent reason why he may have been reluctant to obtain medical treatment.

*Misty D. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-00378, 2022 WL 714233, at *5 & n.5 (S.D. Ohio Mar. 10, 2022) (declining to address claimant's remaining arguments where remand was warranted for reconsideration of claimant's possible reasons for failing to seek mental health treatment), *report and recommendation adopted*, 2022 WL 889256 (S.D. Ohio Mar. 25, 2022); *Bajlory v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-00096, 2022 WL 822128, at *7 (M.D. Tenn. Feb. 25, 2022) (declining to address claimant's remaining arguments where remand was warranted for reconsideration of claimant's symptoms), *report and recommendation adopted*, 2022 WL 822023 (M.D. Tenn. Mar. 17, 2022). If necessary, Newman may raise these issues again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Newman's motion for judgment on the administrative record (Doc. No. 19) be GRANTED, that the Commissioner's final decision be VACATED, and that this matter be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of March, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge